BRYAN CAVE LLP
Paul M. Kaplan (PK 9016)
Scott H. Kaiser (SK 6218)
1290 Avenue of the Americas
New York, New York
(212) 541-2000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



- - - - - - - - - - - - - - - - - - - - - - - - - - -x

MACQUARIE GROUP LIMITED,
MACQUARIE BANK LIMITED, DAVID
CLARKE, ALLAN MOSS, RICHARD
SHEPPARD, BEN BRUCK, AND JOHN
BRAKEY,

                 Plaintiffs,

                 v.

PACIFIC CORPORATE GROUP LLC,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

Case No. _____

**COMPLAINT FOR
DECLARATORY RELIEF**

Plaintiffs Macquarie Group Limited, Macquarie Bank Limited, David Clarke, Allan Moss,

Richard Sheppard, Ben Bruck and John Brakey (collectively, "Plaintiffs") allege as follows:

## NATURE OF ACTION

1.      This is an action for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202,

for the purpose of determining a question of actual controversy between the parties as more fully set

out below.

## PARTIES

2.      Macquarie Group Limited ("MGL") is a publicly traded Australian corporation

which has its principal place of business in Sydney, Australia.

C068389/0219184/1477681.1

3.      Macquarie Bank Limited ("MBL") is an Australian corporation which has its principal place of business in Sydney, Australia. MBL is an indirectly wholly owned subsidiary of MGL.

4.      The Macquarie Group of companies, of which MGL is the ultimate parent company, is comprised of six main business divisions that specialize in defined product or market sectors. The Macquarie Funds Management Group is one such division.

5.      David Clarke ("Clarke"), a resident of Sydney, Australia, was the Executive Chairman of MBL until March 2007, the Non-Executive Chairman of MBL since April 2007, and the Non-Executive Chariman of MGL since November 2007, at all times relevant to this action.

6.      Allan Moss ("Moss"), a resident of Sydney, Australia, was the Managing Director and Chief Executive of MBL until November 2007 and the Managing Director and Chief Executive of MGL since November 2007, at all times relevant to this action, and he intends to retire from MGL in May 2008.

7.      Richard Sheppard ("Sheppard"), a resident of Sydney, Australia, was the Deputy Managing Director of MBL until November 2007 and the Managing Director of MBL since November 2007, at all times relevant to this action.

8.      Ben Bruck ("Bruck"), a resident of Sydney, Australia, was the Head of Macquarie Funds Management Group, a business division within MGL, at all times relevant to this action.

9.      John Brakey ("Brakey"), a resident of Sydney, Australia, was the head of Macquarie Funds Management Group's Alternative Investments private equity management business at all times relevant to this action.

10.     Upon information and belief, Pacific Corporate Group LLC ("PCG") is a Delaware corporation with its principal place of business in La Jolla, California. It also maintains an office in New York, New York for the conduct of business. PCG has threatened to file a complaint against

2

Plaintiffs and others in the Superior Court of the State of California for the County of San Diego. A copy of the proposed complaint is attached hereto as Exhibit A.

## JURISDICTION AND VENUE

11.　　This court has jurisdiction of the subject matter of this action because it arises out of the laws of the United States. As is more fully shown below, this dispute concerns the applicability of various federal statutes including 18 U.S.C. §§ 1028(a)(7), 1030, and 1343, and the Investment Advisers Act of 1940 (15 U.S.C. § 80b-1 et seq.) to the conduct of Plaintiffs.

12.　　This court has supplemental jurisdiction over areas of the dispute concerning various California statutes including California Penal Code §§ 502, 529, 530.5, and 538a, and California Business and Professions Code § 17200 because the declaration of Plaintiffs' rights under those statutes arises out of the same common nucleus of operative facts as the declaration of Plaintiffs' rights under federal statutes.

13.　　Plaintiffs MGL and MBL are Australian corporations with their principal places of business in Australia. Plantiffs Clarke, Moss, Sheppard, Bruck and Brakey are citizens of Australia. Upon information and belief, PCG is a Delaware corporation with its principal place of business in California. Thus, there is complete diversity of citizenship between all plaintiffs and the defendant in this action. As is more fully shown below, more than $75,000, exclusive of interest and costs, is in dispute in this action. Therefore, this court has jurisdiction of this dispute under the provisions of 28 U.S.C. § 1332.

14.　　This court is a proper venue for this action under 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to this dispute occurred in this judicial district, as Peter Martenson's ("Martenson") employment contract with a subsidiary of MGL is governed by New York law and contains a New York forum selection clause. Additionally, PCG is subject to

personal jurisdiction in this district because it maintains an office and conducts business in this judicial district.

## FACTS UNDERLYING DISPUTE

15.     PCG has notified the Plaintiffs that it has claims against Plaintiffs for violations of 18 U.S.C. §§ 1028(a)(7), 1030, and 1343, the Investment Advisers Act of 1940 (15 U.S.C. § 80b-1 et seq.), California Penal Code §§ 502, 529, 530.5, and 538a, and California Business and Professions Code § 17200, stemming from the conduct of Martenson, a former employee of a subsidiary of MGL. PCG has presented Plaintiffs with a proposed complaint that it intends to file against them in the Superior Court of the State of California for the County of San Diego.

16.     Upon information and belief, prior to being employed by a subsidiary of MGL, Martenson was employed by PCG.

17.     Upon information and belief, during Martenson's employment by PCG, PCG attempted to require him to sign an unenforceable non-competition agreement.

18.     PCG incorrectly alleges in its proposed complaint that MBL "is the ultimate parent and a control person of" Macquarie Funds Management (USA) Inc. ("MFMUSA"). MGL is the ultimate parent and a control person of MFMUSA.

19.     PCG claims that in October 2006, subsequent to Martenson's joining a subsidiary of MGL, Martenson sent e-mails to a number of PCG employees, in which he falsely identified the author of the e-mails as PCG Chairman Christopher Bower ("Bower").

20.     PCG claims that in October 2006, Martenson also sent an e-mail to Dow Jones reporter Laura Kreutzer, in which he falsely identified the author of the e-mail as PCG's former President. PCG alleges that Martenson "purported to transmit disparaging information about PCG from the website of PCG's client Avadis."

4

21.    PCG claims that Plaintiffs are responsible for Martenson's conduct.  Plaintiffs vehemently disagree with PCG's contention.

22.    Despite PCG's claims that Martenson was acting on behalf of the other Plaintiffs in sending these e-mails, Martenson acted independently in his sole and exclusive personal capacity in sending these e-mail messages.

23.    Martenson sent the e-mail messages outside the scope of his employment and did not involve, discuss with, or otherwise engage any Plaintiff in his actions before he transmitted the e-mails.

24.    None of the Plaintiffs had any prior knowledge that Martenson was sending these e-mails.

25.    There was no conspiracy by Plaintiffs to transmit these e-mails or to damage PCG in any way.

26.    PCG falsely claims that Plaintiffs were aware of Martenson's conduct before he transmitted the e-mails and engaged in a conspiracy to damage it.  Such allegation of conspiracy is not pled as a cause of action in Defendant's proposed complaint nor is any evidence alleged supporting Defendant's claim of damage to its business.

27.    Based on its false claims that Plaintiffs were aware of Martenson's conduct, that Martenson was acting within the scope of his employment, that there was a conspiracy amongst the Plaintiffs to damages PCG, and that Martenson acted on behalf of Plaintiffs in sending the e-mails, PCG wrongfully claims that Plaintiffs have committed the following crimes: fraud and identity theft pursuant to 18 U.S.C. § 1028(a)(7), wire fraud pursuant to 18 U.S.C. § 1343, computer fraud and abuse pursuant to 18 U.S.C. § 1030, computer crime pursuant to California Penal Code § 502, false personation pursuant to California Penal Code § 529, unauthorized use of personal identifying information pursuant to California Penal Code § 530.5, false signing of a letter pursuant to

5

California Penal Code § 538a, and unfair trade practices pursuant to California Business and Professions Code § 17200. PCG also falsely asserts that Plaintiffs have violated Sections 204A and 206, and Rule 204A-1 of the Investment Advisers Act of 1940 (15 U.S.C. § 80b-1 et seq.).

28.  PCG asserts that it is entitled to relief from Plaintiffs under five theories of liability: (i) Intentional Interference with Contracts; (ii) Intentional Interference with Economic Relationships; (iii) Negligent Interference with Economic Relationships; (iv) Invasion of Privacy; and (v) Violation of Unfair Competition Laws (collectively, the "Theories of Liability").

29.  PCG has informed Plaintiffs that it is entitled to $25,000,000 in compensation for the damages that it alleges in the proposed complaint.

## DECLARATION SOUGHT

30.  In order to resolve this controversy, Plaintiffs request that, pursuant to 28 U.S.C. § 2201, this court declare the respective rights and duties of the parties in this matter and, in particular, that the court declare that Plaintiffs are not liable under any of the Theories of Liability for violating any of these statutes, 18 U.S.C. §§ 1028(a)(7), 1030, and 1343, the Investment Advisers Act of 1940 (15 U.S.C. § 80b-1 et seq.), California Penal Code §§ 502, 529, 530.5, and 538a, and California Business and Professions Code § 17200, because Martenson acted individually, outside the scope of his employment, without the knowledge or consent of the Plaintiffs, and without being engaged in a conspiracy with the Plaintiffs to cause damages to PCG when he sent the four e-mails attached to the proposed complaint.

## PROPRIETY OF DECLARATION

31.  A valid case or controversy exists sufficient for this court to declare the rights and remedies of the parties in that PCG has incorrectly asserted facts in its proposed complaint and has wrongfully alleged that Plaintiffs have violated numerous federal and state statutes.

6

32.    Plaintiffs have the requisite standing to request this declaration in that PCG has informed Plaintiffs of its intent to sue them for damages in an amount to be determined at trial, which PCG has informed Plaintiffs it estimates at $25,000,000 for violating various federal and state statutes.

33.    This controversy is ripe for determination at this time because PCG has not yet commenced an action in the Superior Court of California for the County of San Diego, but indicates that it will do so imminently, which would involve great costs and expense for the Plaintiffs in defending against that action.

## REQUEST FOR RELIEF

For the reasons set forth above, Plaintiffs demand that:

A.    This court render a declaratory judgment providing that Plaintiffs are not liable under any of the Theories of Liability for violating any of these statutes, 18 U.S.C. §§ 1028(a)(7), 1030, and 1343, the Investment Advisers Act of 1940 (15 U.S.C. § 80b-1 et seq.), California Penal Code §§ 502, 529, 530.5, and 538a, and California Business and Professions Code § 17200, because Martenson acted individually, outside the scope of his employment, without the knowledge or consent of the Plaintiffs, and without being engaged in a conspiracy with the Plaintiffs to cause damages to PCG when he sent the four e-mails attached to the proposed complaint.

B.    Plaintiffs receive their costs of suit, including reasonable attorney's fees; and

C.    This court grant Plaintiffs any and all other relief to which they may be justly entitled.

C068389/0219184/1477681.1

Dated:    New York, New York
          April 7, 2008

BRYAN CAVE LLP

By

          Paul M. Kaplan (PK 9016)
1290 Avenue of the Americas
New York, New York 10104
(212) 541-2000

*Attorneys for Plaintiffs*

8

1  SULLIVAN, HILL, LEWIN, REZ & ENGEL
   A Professional Law Corporation
2    Jeffrey D. Lewin, SBN 68202
   550 West "C" Street, Suite 1500
3  San Diego, California 92101
   Telephone: (619) 233-4100
4  Fax Number: (619) 231-4372

5  Attorneys for Plaintiff Pacific Corporate Group LLC.

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     FOR THE COUNTY OF SAN DIEGO

10

11  PACIFIC CORPORATE GROUP LLC,          )    Case No.
                                          )
12              Plaintiff,                 )    **COMPLAINT FOR INTENTIONAL**
                                          )    **INTERFERENCE WITH**
13  v.                                     )    **CONTRACTS, INTENTIONAL**
                                          )    **INTERFERENCE WITH**
14  MACQUARIE BANK LIMITED,               )    **ECONOMIC RELATIONSHIPS,**
    MACQUARIE FUNDS MANAGEMENT,           )    **NEGLIGENT INTERFERENCE**
15  MACQUARIE FUNDS MANAGEMENT            )    **WITH ECONOMIC**
    (USA) INC., DAVID CLARKE, ALLAN       )    **RELATIONSHIPS, INVASION OF**
16  MOSS, RICHARD SHEPPARD, BEN           )    **PRIVACY AND VIOLATION OF**
    BRUCK, JOHN BRAKEY, PETER             )    **CALIFORNIA UNFAIR**
17  MARTENSON and DOES 1-10,              )    **COMPETITION LAW INCLUDING**
                                          )    **CALIFORNIA BUSINESS AND**
18              Defendants.                )    **PROFESSIONS CODE §§ 17200** *ET*
                                          )    *SEQ.*
19                                         )
                                          )
20                                         )    Judge:          Hon.
                                          )    Dept:
21                                         )    Complaint Filed: November    , 2007
                                          )
22                                         )
                                          )
23  ─────────────────────────────────────)

24

25

26

27

28

::ODMA\PCDOCS\PCDOCS\273033\1

─────────────────────────────────────────────
                        COMPLAINT

1       Plaintiff Pacific Corporate Group LLC ("PCG") alleges as follows:

2                                        **I.**

3                         **INTRODUCTION**

4      1.     This case arises from vicious and illegal cyber attacks by an Australian bank designed

5 to kill or wound an American competitor in the business of advising institutional investors, including

6 American governmental (public pension) funds, with respect to billions of dollars in private equity

7 investments. Defendants' attacks had two prongs, one internal and one external. The internal

8 attacks consisted of phony emails questioning the loyalty of key employees of the American

9 company, disguised to appear as though they were written by its Chairman, with the intended

10 purpose and effect to upset its key employees and cause them to quit, to distract its other top

11 officials, to disrupt its operations and to destabilize it. The external attack consisted of a phony e-

12 mail, disguised to appear as though it was written by the former President of the American company,

13 to one or more prestigious business publications, with the intended purpose and effect to fuel false

14 and negative publicity about the stability and reliability of the American company and to cause its

15 customers to abandon it. Defendants' despicable and heinous surprise attacks constitute fraud and

16 identity theft, wire fraud, computer fraud and abuse, computer crime, false personation, unauthorized

17 use of personal identifying information, and false signing of letters in violation of federal and state

18 criminal statutes and the torts of illegal unfair competition, illegal interference with contracts and

19 business relationships and illegal invasion of privacy.

20                                       **II.**

21                          **PARTIES**

22      2.     PCG is a California corporation qualified to do business and doing business in the

23 State of California with its principal place of business in La Jolla, California, and with other offices

24 in New York City, New York, Boston, Massachusetts and Washington, D.C.

25      3.     PCG is informed and believes that Macquarie Bank Limited ("Macquarie") is a

26 publicly traded Australian corporation which has its principal place of business in Sydney, Australia,

27 and that at all times relevant hereto it has transacted business in San Diego County, California.

28 Macquarie represents that it aspires to be a pre-eminent provider of financial services; that the values

::ODMA\PCDOCS\PCDOCS\273033\1           1

1 | to which it aspires include integrity; that it has seven operating groups, one of which manages

2 | investment funds; that it employs more than 10,000 people in 24 countries; that it has been active in

3 | the United States for more than a decade; that it has more than 750 professionals in offices in 18

4 | United States locations; and that in the fiscal year ended March 31, 2007, it had total income of 7.2

5 | billion Australian Dollars ("$A"), profit of $A1.5 billion and net assets of $A7.5 billion. Macquarie

6 | is the ultimate parent and a control person of Macquarie Funds Management (USA) Inc.

7 |     4.     PCG is informed and believes that Macquarie Funds Management Group ("MFMG")

8 | is Macquarie's securities asset management arm, that it has its principal place of business in Sydney,

9 | Australia, and that at all times relevant hereto it has transacted business in San Diego County,

10 | California. Macquarie represents that MFMG is one of the largest fund managers in Australia; that it

11 | manages more than $A63.4 billion in assets of which $A3 billion is in private equity assets; that it

12 | comprises subsidiaries in Australia, Hong Kong and California; that it has offices in Australia,

13 | Korea, Hong Kong, Taiwan, United Kingdom and California; and that it has three investment

14 | professionals located in Carlsbad, California, at Macquarie Funds Management (USA) Inc.

15 |     5.     PCG is informed and believes that Macquarie Funds Management (USA) Inc. ("MFM

16 | USA") is a Delaware corporation and that it has its principal place of business in Carlsbad,

17 | California. Macquarie represents that MFM USA is an SEC registered investment advisor which

18 | offers global private equity portfolio management advisory services for business and institutional

19 | clients, which manages US$588 million in assets, and which offers private equity fund-of-funds

20 | operations.

21 |     6.     PCG is informed and believes that at all times relevant hereto David Clarke was Non-

22 | Executive Chairman and on the Executive Committee of Macquarie and a resident of Sydney,

23 | Australia, and that he conspired to perform, authorized or ratified the illegal cyber attacks and other

24 | illegal misconduct that are the subject of this complaint.

25 |     7.     PCG is informed and believes that at all times relevant hereto Allan Moss was

26 | Managing Director and Chief Executive Officer and on the Executive Committee of Macquarie and

27 | a resident of Sydney, Australia, and that he conspired to perform, authorized or ratified the illegal

28 | cyber attacks and other illegal misconduct that are the subject of this complaint.

1        8.     PCG is informed and believes that at all times relevant hereto Richard Sheppard was

2 Deputy Managing Director and on the Executive Committee of Macquarie and a resident of Sydney,

3 Australia.

4        9.     PCG is informed and believes that at all times relevant hereto Ben Bruck was Head of

5 MFM and a resident of Sydney, Australia, and that he conspired to perform, authorized or ratified

6 the illegal cyber attacks and other illegal misconduct that are the subject of this complaint.

7       10.    PCG is informed and believes that at all times relevant hereto John Brakey was

8 Division Director, Head of MFM Alternative Investments, Director and Control Person of MFM

9 USA, and a resident of Sydney, Australia, and that he conspired to perform, authorized or ratified the

10 illegal cyber attacks and other illegal misconduct that are the subject of this complaint.

11      11.    PCG is informed and believes that at all times relevant hereto Peter Martenson was

12 Director, Chief Executive Officer and Control Person of MFM USA employed in its Carlsbad,

13 California office and a resident of San Diego County, California, and that he performed and

14 conspired to perform the illegal cyber attacks and other illegal misconduct that are the subject of this

15 complaint.

16      12.    PCG is unaware of the true names and capacities of the defendants sued as Does 1-10

17 inclusive and has therefore sued them by such fictitious names. PCG is informed and believes that

18 each of these fictitiously named defendants is legally responsible in some manner for harming it, and

19 it will amend this Complaint to allege their true names and capacities when ascertained.

20      13.    PCG is informed and believes that Defendants either are, or are required to be,

21 registered under the Investment Advisers Act of 1940 (15 U.S.C. §80b-1 et seq.). As registered

22 investment advisers, Defendants report to, and are under the supervisory authority of, the United

23 States Securities Exchange Commission.

24      14.    PCG alleges on information and belief that at all relevant times herein mentioned

25 each of the Defendants was the agent, employee, controlling or controlled person, aider, abettor,

26 successor, predecessor, principal and/or alter ego, or co-conspirator with, of some or all of the other

27 Defendants, and that in connection with the acts, practices, omissions and breaches set forth below,

28 was acting within the scope of such relationship.

::ODMA\PCDOCS\PCDOCS\273033\1            3

**III.**

## BACKGROUND FACTS APPLICABLE TO ALL CAUSES OF ACTION

15.    PCG is a highly respected international private equity investment manager which has specialized in advising institutional investors with respect to private equity investments since 1979.

16.    Before the 1990s Macquarie did not advise institutional investors with respect to private equity investments. In the 1990s PCG and Macquarie began to work together to promote private equity investments in Australia and New Zealand. Pursuant to this working relationship Macquarie learned PCG's private equity business operations, clients and employees. However, Macquarie terminated this working relationship, taking for itself a client jointly managed by both PCG and Macquarie.

17.    In mid-2005, Macquarie hired away from PCG three of its investment professionals, and since then Macquarie has competed with PCG in advising institutional investors with respect to private equity investments.

18.    In mid-2006, Macquarie announced that it had established its own private equity investment advisory practice in Carlsbad, California; that its Carlsbad investment professionals included Peter Martenson, the head of its Carlsbad, California office; that Macquarie had an "aggressive attitude towards expanding worldwide;" and that it had formed its own private equity fund of funds.

19.    Since mid-2006, PCG and Macquarie have directly competed with one another for numerous mandates, and Macquarie has solicited a number of PCG clients and potential clients.

20.    On October 2 and 3, 2006, Macquarie, by and through Peter Martenson, the head of its Carlsbad, California office, sent emails to a number of PCG employees which falsely identified the author as PCG Chairman Christopher Bower. True and correct copies of three such emails are attached hereto as Exhibits 1, 2 and 3. PCG is informed and believes that Defendants knew that these emails would disrupt PCG operations and they intended to cause such disruption.

21.    On October 3, 2006, Macquarie, by and through Peter Martenson, the head of its Carlsbad, California office, sent to Dow Jones reporter Laura Kreutzer an email which purported to transmit disparaging information about PCG from the website of PCG's client Avadis and which

1   falsely identified the author as PCG's former President.  A true and correct copy of this email is

2   attached hereto as Exhibit 4.  PCG is informed and believes that Defendants knew that this email

3   would cause negative publicity about PCG and they intended to cause such negative publicity.

4        22.    PCG is informed and believes that Macquarie and the other Defendants have also

5   taken other unfair and/or illegal actions to disrupt PCG's relationships with its employees and its

6   clients, including but not limited to sending false emails to or about PCG and making numerous false

7   and slanderous statements about PCG to PCG's clients and potential clients in the United States,

8   Australia and Europe.  As a result of Defendants' unfair and/or illegal actions, PCG has lost clients,

9   potential clients and profits.

10       23.    In February of 2007 Peter Martenson, the head of Macquarie's Carlsbad, California

11  office, confessed to PCG that he had sent the false emails and that his superiors at Macquarie in

12  Australia were aware.  As a result, PCG is informed and believes that Defendants have committed

13  the following crimes:  fraud and identity theft within the meaning of 18 U.S.C.A. § 1028(a)(7), wire

14  fraud within the meaning of 18 U.S.C.A. § 1343, computer fraud and abuse within the meaning of 18

15  U.S.C.A. § 1030, computer crime within the meaning of California Penal Code § 502, false

16  personation within the meaning of California Penal Code § 529, unauthorized use of personal

17  identifying information within the meaning of California Penal Code § 530.5, and false signing of a

18  letter within the meaning of California Penal Code § 538a.

19       24.    PCG is informed and believes that, as investment advisers registered under the

20  Investment Advisers Act of 1940 (15 U.S.C. § 80b-1 et seq.), Defendants are subject to the

21  following provisions of, or regulations promulgated under, that Act:

22       (a)    Section 206 (15 U.S.C. § 80b-6), which in pertinent part makes it "unlawful

23  for any investment adviser, by use of the mails or any means or instrumentality of interstate

24  commerce, directly or indirectly - (1) to employ any device, scheme, or artifice to defraud any client

25  or prospective client; (2) to engage in any transaction, practice or course of business which operates

26  as a fraud or deceit on any client or prospective client;...[or] (4) to engage in any act, practice, or

27  course of business which is fraudulent, deceptive, or manipulative";

28       (b)    Section 204A (15 U.S.C. § 80b-64a), which in pertinent part requires

::ODMA\PCDOCS\PCDOCS\273033\1

5

COMPLAINT

1 | registered investment advisers to "establish, maintain, and enforce written policies and procedures
2 | reasonably designed, taking into account the nature of such adviser's business, to prevent the misuse
3 | in violation of this Act or the Securities Exchange Act of 1934, or the rules or regulations
4 | thereunder, of material, nonpublic information by such investment adviser or any person associated
5 | with such investment adviser"; and

6 |        (c)     Rule 204A-1 (17 C.F.R. § 275.204A-1), which in pertinent part requires
7 | registered investment advisers to "establish, maintain, and enforce a written code of ethics that, at a
8 | minimum, includes: (1) A standard (or standards) of business conduct that you require of your
9 | supervised persons, which standard must reflect your fiduciary obligations and those of your
10 | supervised persons;…" PCG is informed and believes that, in committing the acts and omissions
11 | alleged herein, Defendants breached their above-described duties and obligations as registered
12 | investment advisers under the Investment Advisers Act of 1940.

13 |     25.    Macquarie's Code of Conduct applies to all Directors and employees of Macquarie
14 | and its related entities. Macquarie's Code of Conduct provides in pertinent that "Integrity is the
15 | concept upon which all of our actions are based and by which we are happy for our actions to be
16 | judged"; that Macquarie is committed to "ensuring that dealings between Macquarie and a …
17 | competitor are conducted in a lawful and fair manner"; and that "a significant breach of this Code
18 | will be escalated to senior management and to the Board…." PCG is informed and believes that
19 | notwithstanding Macquarie's Code of Conduct Defendants, and each of them, condoned approved or
20 | ratified the despicable, illegal and unfair misconduct described in paragraphs 17 through 23 above.

21 | **IV.**
22 | __**THEORIES OF LIABILITY**__
23 | **FIRST CAUSE OF ACTION**
24 | **(Intentional Interference with Contracts)**

25 |     26.    PCG incorporates herein by reference each and every allegation contained in
26 | paragraphs 1 through 25 above.

27 |     27.    PCG is informed and believes that Defendants knew of PCG's contracts with its
28 | clients, including AP-1, Avadis, California Public Employees' Retirement System ("CalPERS"),

::ODMA\PCDOCS\PCDOCS\273033\1

6

1  Illinois Teachers' Retirement System ("ITRS"), New York City Retirement System ("NYCRS"),

2  Ohio Public Employees' Retirement System ("OPERS"), Oregon Public Employees Retirement

3  Fund ("OPERF") and Rhode Island State Investment Commission ("RISIC"), and further knew that

4  PCG stood to derive substantial economic benefit from those contracts.

5    28.    Defendants engaged in intentional and willful bad faith conduct, including but not

6  limited to the identity theft, wire fraud, false personation, unauthorized use of personal identifying

7  information, false signing of a letter and invasion of privacy set forth above, calculated to disrupt

8  PCG's contractual relationships and related economic opportunities and reasonable expectations.

9    29.    As a result of Defendants' conduct, PCG's contractual relationships with AP-1,

10  Avadis, CalPERS, ITRS, NYCRS, OPERS, OPERF and RISIC were in fact disrupted, and PCG has

11  been denied the benefits thereof.

12    30.    As a direct and proximate result of Defendants' interference with PCG's contracts

13  with AP-1, Avadis, CalPERS, ITRS, NYCRS, OPERS, OPERF and RISIC, PCG has suffered

14  monetary damages and continues to suffer monetary damages, according to proof at trial.

15    31.    Defendants' conduct identified above was intentionally undertaken with fraud,

16  malice, oppression and a conscious and reckless disregard for PCG's rights.  Such conduct thus

17  constitutes despicable conduct and PCG is entitled to recover punitive and exemplary damages in an

18  amount according to proof.

19                     **SECOND CAUSE OF ACTION**

20              **(Intentional Interference with Economic Relationships)**

21    32.    PCG incorporates herein by reference each and every allegation contained in

22  paragraphs 1 through 31 above.

23    33.    Before October of 2006, PCG had established relationships with potential clients for

24  its investment services and products in the United States and throughout the world.

25    34.    Pursuant to a prior joint venture between PCG and Macquarie and as a result of

26  Macquarie's hiring PCG investment professionals, Defendants learned about PCG's relationships

27  with its potential clients.

28    35.    Beginning at least as early as October of 2006, Defendants intentionally developed

and implemented a scheme to deprive PCG of the benefit of its economic relationships by engaging in intentional and willful bad faith conduct including but not limited to the identity theft, wire fraud, false personation, unauthorized use of personal identifying information, false signing of a letter and invasion of privacy set forth above. Defendants' intentional interference with PCG's economic relations was wrongful, *inter alia*, because it constituted fraud and identity theft within the meaning of 18 U.S.C.A. § 1028(a)(7), wire fraud within the meaning of 18 U.S.C.A. § 1343, computer fraud and abuse within the meaning of 18 U.S.C.A. § 1030, computer crime within the meaning of California Penal Code § 502, false personation within the meaning of California Penal Code § 529, unauthorized use of personal identifying information within the meaning of California Penal Code § 530.5, false signing of a letter within the meaning of California Penal Code § 538a, and an unfair trade practice in violation of Business and Professions Code § 17200.

36.     Defendants disrupted PCG's economic relationships with its potential customers by fueling false and defamatory publicity about PCG.

37.     As a direct and proximate result of Defendants' interference with PCG's economic relations, PCG has suffered monetary damages and continues to suffer monetary damages, according to proof at trial.

38.     PCG is informed and believes and on that ground alleges that Defendants' conduct identified above was intentionally undertaken with fraud, malice, oppression and a conscious and reckless disregard for PCG's rights. Such conduct thus constitutes despicable conduct and PCG is entitled to recover punitive and exemplary damages in an amount according to proof.

## THIRD CAUSE OF ACTION

### (Negligent Interference with Economic Relationships)

39.     PCG incorporates herein by reference each and every allegation contained in paragraphs 1 through 38 above.

40.     Before October of 2006, PCG had established relationships with potential clients for its investment services and products in the United States and throughout the world.

41.     Pursuant to PCG's joint venture with Macquarie and as a result of hiring PCG investment professionals, Defendants learned about PCG's relationships with its potential clients.

1    42.    PCG is informed and believes that beginning at least as early as October of 2006,

2    Defendants negligently developed and implemented a scheme to deprive PCG of the benefit of its

3    economic relationships by conduct including but not limited to the identify theft, wire fraud and

4    invasion of privacy set forth above.  Defendants' interference with PCG's economic relations was

5    wrongful, *inter alia*, because it constituted fraud and identity theft within the meaning of 18

6    U.S.C.A. § 1028(a)(7), wire fraud within the meaning of 18 U.S.C.A. § 1343, computer fraud and

7    abuse within the meaning of 18 U.S.C.A. § 1030, computer crime within the meaning of California

8    Penal Code § 502, false personation within the meaning of California Penal Code § 529,

9    unauthorized use of personal identifying information within the meaning of California Penal Code §

10    530.5, false signing of a letter within the meaning of California Penal Code § 538a, and an unfair

11    trade practice in violation of Business and Professions Code § 17200.

12    43.    Defendants disrupted PCG's economic relationships with its potential customers by

13    fueling false and defamatory publicity about PCG.

14    44.    As a direct and proximate result of Defendants' interference with PCG's economic

15    relations, PCG has suffered monetary damages and continues to suffer monetary damages, according

16    to proof at trial.

17    ### FOURTH CAUSE OF ACTION

18    **(Invasion of Privacy)**

19    45.    PCG incorporates herein by reference each and every allegation contained in

20    paragraphs 1 through 44 above.

21    46.    At least as early as October of 2006, Defendants invaded PCG's right to privacy by

22    sending emails to a number of PCG employees which falsely identified the author as PCG Chairman

23    Christopher Bower.  True and correct copies of three such emails are attached hereto as Exhibits 1, 2

24    and 3.

25    47.    PCG and its Chairman Christopher Bower did not consent to Defendants'

26    appropriation of PCG's name or Chairman Christopher Bower's name, and Defendants'

27    appropriation of those names was not authorized.

28    48.    PCG is informed and believes that Defendants' appropriation of the names of PCG

::ODMA\PCDOCS\PCDOCS\273033\1                    9

COMPLAINT

1 | and its Chairman Christopher Bower were for Defendants' advantage because the phony emails

2 | questioning the loyalty of key PCG employees, disguised to appear as though they were written by

3 | PCG Chairman Christopher Bower, had the intended purpose to upset the key employees and cause

4 | them to quit, to distract its other top officials, to disrupt its operations and to destabilize it, all for

5 | Defendants' pecuniary gain.

6 |      49.     As a direct and proximate result of Defendants' invasion of PCG's privacy by

7 | appropriating its name without PCG's consent, PCG has suffered monetary damages and continues

8 | to suffer monetary damages, according to proof at trial.

9 |      50.     PCG is informed and believes and on that ground alleges that Defendants' conduct

10 | identified above was intentionally undertaken with fraud, malice, oppression and a conscious and

11 | reckless disregard for PCG's rights. Such conduct thus constitutes despicable conduct and PCG is

12 | entitled to recover punitive and exemplary damages in an amount according to proof.

13 | **FIFTH CAUSE OF ACTION**

14 | **(Violation of the Unfair Competition Laws)**

15 |      51.     PCG incorporates herein by reference each and every allegation contained in

16 | paragraphs 1 through 50 above.

17 |      52.     Defendants have engaged in unlawful, fraudulent and/or unfair business practices (1)

18 | which is calculated to deceive the general public; (2) which presents a continuing threat to members

19 | of the public in that institutional investors will be misled about the ability of PCG to advise them and

20 | manage their investments; (3) which offends established public policy and is immoral and/or

21 | unethical in violation of 15 U.S.C.A. § 80b-1 *et seq.*; 18 U.S.C.A. §§ 1028(a)(7), 1030 and 1343;

22 | California Penal Code §§ 502, 529, 530.5 and 538a; and California Business and Professions Code

23 | §§ 17200 *et seq.*; and (4) which violates  the "no harm" standard of review as to business practices of

24 | governmental agencies such as public utility commissions for persons doing business within their

25 | respective state oversight.

26 |      53.     As a result, Defendants should be ordered to make restitution of all benefits and

27 | disgorge all profits they have received from their unfair competition.

28 |

::ODMA\PCDOCS\PCDOCS\273033\1                     10

COMPLAINT

V.

**PRAYER FOR RELIEF**

WHEREFORE, PCG requests relief as follows:

1.     For economic damages according to proof including, but not limited to, lost profits;

2.     For punitive damages;

3.     For restitution of all benefit conveyed on Defendants;

4.     For disgorgement of all profits earned from Defendants' unlawful or unfair practices;

5.     For injunctive relief;

6.     For interest as allowed by law;

5.     For costs of suit;

6.     For reasonable attorneys' fees;

7.     For such other and further relief as is the Court may deem just and proper.

Dated: _____          SULLIVAN, HILL, LEWIN, REZ & ENGEL
                                        A Professional Law Corporation


                                        By: _____
                                            Jeffrey D. Lewin
                                            Attorneys for Plaintiff Pacific Corporate
                                            Group LLC.

**EXHIBIT 1**

-----Original Message-----
From: Christopher Bower
Sent: Monday, October 02, 2006 8:59 PM
To: Stella Dyer
Subject: Forwarded from seattlepi.com: Venture Capital: Startup persists despite
legal woes

Chris Bower (cbower@pcgfunds.com) has sent the following story
to you from seattlepi.com.

Comments from Chris Bower:
Stella, Please review this news story carefully...is everybody at
PCG under an ironclad non-compete?  How about John Engel?
Everybody else?  Check on it and ensure that is the case.  I get
the feeling that there are a number of people that haven't
signed their non-compete.  Report to me personally. Chris

------------------------------------------------------------
Venture Capital: Startup persists despite legal woes
Facing litigation from its biggest competitor, Seattle-based
Torrent Technologies still manages to raise $3.3 million in a
first round of capital.

* Read the full article at:
http://seattlepi.nwsource.com/venture/285185_vc15.html

------------------------------------------------------------
Keep track of what's happening around the Northwest at

# EXHIBIT 1

PCG000560

http://www.seattlepi.com -- updated all day and as news breaks.

PCG000561

**EXHIBIT 2**

**From:**      Christopher Bower
**Sent:**      Monday, October 02, 2006 08:59 PM
**To:**      Mark Oemcke
**Subject:**      Forwarded from seattlepi.com: Venture Capital: Startup persists despite legal woes

Chris Bower (cbower@pcgfunds.com) has sent the following story to you from seattlepi.com.

Comments from Chris Bower:
Mark,Please review this news story carefully...is everybody at PCG under an ironclad non-compete?  Check with Stella and ensure that is the case.  I get the feeling that there are a number of people that haven't signed their non-compete.  Chris

---------------------------------------------------------------

Venture Capital: Startup persists despite legal woes
Facing litigation from its biggest competitor, Seattle-based Torrent Technologies still manages to raise $3.3 million in a first round of capital.

* Read the full article at:
http://seattlepi.nwsource.com/venture/285185_vc15.html

---------------------------------------------------------------
Keep track of what's happening around the Northwest at
http://www.seattlepi.com -- updated all day and as news breaks.

# EXHIBIT 2

PCG000387

# EXHIBIT 3

-----Original Message-----
From: Christopher Bower
Sent: Tuesday, October 03, 2006 8:00 AM
To: John Engel
Subject: Forwarded from seattlepi.com: Venture Capital: Startup persists despite legal woes

Chris Bower (cbower@pcgfunds.com) has sent the following story to you from seattlepi.com.

Comments from Chris Bower:
John,Review this article. Notice the subject. Then leave me a voicemail as to why you have not signed your non-compete when you worked for Monte. I need loyal employees.Chris

------------------------------------------------------------
Venture Capital: Startup persists despite legal woes
Facing litigation from its biggest competitor, Seattle-based Torrent Technologies still manages to raise $3.3 million in a first round of capital.

* Read the full article at:
http://seattlepi.nwsource.com/venture/285185_vc15.html

------------------------------------------------------------
Keep track of what's happening around the Northwest at
http://www.seattlepi.com -- updated all day and as news breaks.

# EXHIBIT 3

PCG000444

**EXHIBIT 4**

From:          Monte Brem
Sent:          Tuesday, October 03, 2006 03:10 PM
To:            Christopher Bower; Mark Oemcke; Douglas Meltzer
Subject:       FW: Equity firms bid $15.1b for Harrah's


Guys,

I got this email forwarded to me by a reporter at Dow Jones. I did not send
the email to her. After reviewing the email (see the bottom of the email
string) what I believe happened was that someone forwarded the email through
a site where you can forward articles (Boston.com in this case) and said
that it was from me.

She also said she received an earlier email forwarded from me from the
Washington Post web site. These may be being sent to a number of reporters
using my name as the referring website.

I am extremely upset that people are inappropriately using my name to try to
hurt PCG. Mark, if there is any way to stop this I would like to do anything
I can to help.

You can reach me at 760-822-6444.

Regards,

Monte

-----Original Message-----
From: Monte Brem [mailto:montebrem@cox.net]
Sent: Tuesday, October 03, 2006 2:55 PM
To: 'Kreutzer, Laura'
Subject: RE: Equity firms bid $15.1b for Harrah's

Laura,

I didn't send you this email. I need to figure out how the person who sent
this to you did this because I do not want people misrepresenting emails as
coming from me.

Please give me a call at 760-822-6444.

Regards,

Monte


-----Original Message-----
From: Kreutzer, Laura [mailto:Laura.Kreutzer@dowjones.com]
Sent: Tuesday, October 03, 2006 2:48 PM
To: Monte Brem
Subject: RE: Equity firms bid $15.1b for Harrah's

Hi Monte,

You don't happen to have any English version of this do you? I've got a
couple of German speakers looking it over but hoping there might be
additional info gleaned in the text.

Laura

-----Original Message-----
From: Monte Brem [mailto:montebrem@cox.net]
Sent: Tuesday, October 03, 2006 5:36 PM
To: Kreutzer, Laura

# EXHIBIT 4

PCG000422

Subject: Equity firms bid $15.1b for Harrah's

Laura, please review this website as it will visually describe how the
entire senior investment professionals have left PCG. The report is
from May 2006 and shows how the entire senior management group is gonie,
4 of 7 of the investment committee are gone, Tom and Michelle have been
at PCG only a year, Michelle and Kara are on the monitoring side, and
the CFO is gone now as well. Anyway, you make your own judgement but I
don't see anyone with any investment experience.

http://www.avadis.ch/media/pdfs/newsattach/Avadis_Prospekt_PEQWeltV_0605
.pdf

---

The following appeared on Boston.com:
Headline: Equity firms bid $15.1b for Harrah's
Date:     October 3, 2006

"Harrah's Entertainment Inc. , the world's largest gambling company , is
the target of a $15.1 billion offer by two private equity firms."

---

To see this recommendation, click on the link below or cut and paste it
into a Web browser:


http://www.boston.com/business/globe/articles/2006/10/03/equity_firms_bi
d_151b_for_harrahs?p1=email_to_a_friend

---

This message was sent by Monte Brem [mailto:montebrem@cox.net] through
Boston.com's email recommendation service. If you have questions or
comments about this free service, please email us at
feedback@boston.com.

PCG000423